**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
Wheeling

**CODY RAY LEVEKE,**

        Petitioner,

v.                                            **Civil Action No. 5:23-cv-265**
                                                                 Judge Bailey

**WARDEN BROWN** and **MARICOPA**
**COUNTY SHERIFF,**

        Respondents.

## REPORT AND RECOMMENDATION

### I.  Introduction

On July 28, 2023, the pro se petitioner filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc.1].  Petitioner is a federal inmate at FCI Gilmer, in Glenville, West Virginia, serving a 60-month sentence imposed by the United States District Court for the Southern District of Iowa on January 29, 2021, for his conviction on two counts of Interstate Communication of a Threat, in violation of 18 U. S. C. § 875(c). [Doc. 13-2].  He is challenging the legality of a Maricopa County, Arizona, detainer lodged against him, and he also claims that as a result of the detainer, he is being wrongfully denied halfway house placement by the Bureau of Prisons ("BOP"), as is required by 18 U.S.C. §3264. [Doc. 1 at 2, 5].  Petitioner also challenges his convictions in the Southern District of Iowa.

The undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted at that time.  Accordingly, an Order to Show Cause

1

was issued to the respondent. [Doc. 9].  Respondent filed a motion for summary judgment, along with an accompanying memorandum of law, on October 25, 2023. [Doc. 13].  A **Roseboro** notice was sent to the petitioner on October 26, 2023, informing him of his right to file a responsive briefing [Doc. 14], but none was filed. The matter is now before the undersigned for a recommended disposition pursuant to LR PL P 2.  For the reasons set forth below, the undersigned recommends that respondent's motion be granted and that the petition be dismissed.

## II.     Background

On August 8, 2019, petitioner entered guilty pleas to two counts of felony Aggravated Harassment in violation of Arizona Revised Statute § 13-2921.01A1, in Case No: CR 2019-106875-008, before the Maricopa County Superior Court of Arizona.  [Doc. 13-3 at 5]. The Court suspended the imposition of sentence and placed petitioner on supervised probation for a term of two years for each count. [Doc. 13-3 at 5-8].

On January 29, 2021, following a jury trial in the Southern District of Iowa, petitioner was convicted on two counts of Interstate Communication of a Threat, in violation of 18 U.S.C. § 875(c), and on January 29, 2021, he was thereafter sentenced to a term of 60 months on each of the two counts, to be served concurrently. [Docs. 13-1 at 1; 13-2]. Petitioner appealed, and on June 21, 2022, the Eighth Circuit Court of Appeals affirmed his conviction and sentence. **United States v. Leveke**, 38 F.4th 662 (8th Cir. 2022).  The Supreme Court denied his petition for certiorari on October 31, 2022.  **Leveke v. United States**, 143 S. Ct. 386 (2022).

On March 30, 2023, the Maricopa County Superior Court entered an Order of Confinement, finding the petitioner in violation of his probation and ordering that he be

confined in the Arizona Department of Corrections for a period of 1.5 years on Count 003, and one year on Court 004 of his Arizona charges, both sentences to commence on March 30, 2023 and to run concurrently with each other and also with the petitioner's federal sentence imposed in Criminal Case No: 4:20-CR-11 in the Southern District of Iowa, which he was serving at the time the Superior Court Order was entered.  [Doc. 13-3 at 1, 2., 4, 10].  A Detainer from the Office of the Sheriff of Maricopa County, dated April 24, 2023, along with supporting documentation, was subsequently received by the Bureau of Prisons. [Doc. 13-3].   Petitioner's projected release date on his Arizona sentence is March 24, 2024. [Doc. 13-3 at 1, 2]. His projected release date on his federal sentence is January 24, 2024. [Doc. 13-1 at 1].

In the petition presently before this Court, petitioner contends that the detainer from Maricopa County is unlawful and violates his due process rights. [Doc. 1 at 5,6; 1-1 at 1-2].  This claim appears to be primarily based on the argument that authorities in Maricopa County "waited" too long to lodge the detainer against him, resulting in a delay, whereby his state sentence "expires" 60 days after his federal one does, thereby denying him "a fully concurrent sentence" in violation of the Superior Court's Order. [Docs. 1 at 5, 6.; 1-1 at 1-2].  He further asserts that "this illegal detainer" deprived him of a liberty interest by preventing him from designation for halfway house placement. *Id*. Petitioner also challenges his conviction in the Southern District of Iowa on due process, free speech, and equal protection grounds.  [Docs. 1 at 6, 7; 1-1 at 3-4].

As relief, petitioner asks this Court to issue an Order "barring the Maricopa County sheriff from executing its illegal detailer." [Doc. 1 at 8].  He further requests "consideration" for halfway house placement, in addition to a Court Order directing his halfway house

3

placement, pursuant to 18 U.S.C. § 3624. [Doc. 1 at 8; Doc. 1-1 at 2].  He also asks this Court to vacate his convictions in the Southern District of Iowa. [Id.].

### III.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted). Finally, this Court notes that pro se allegations are held to a less stringent

4

standard than those drafted by lawyers and must be liberally construed. **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

### IV.    Analysis

#### A.  Failure to Exhaust Administrative Grievances

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under § 2241. *See* **Braden v.30th Judicial Circuit Court**, 410 U.S. 484, 490-91 (1973*); see also* **McClung v. Shearin**, 90 F. App'x 444, 445 (4th Cir. 2004) (*citing* **Carmona v. United States Bureau of Prisons**, 243 F.3d 629, 634-35 (2d Cir.2001); **Sites v. Warden, FCI Hazelton,** No. 5:21-CV-184, 2022 WL 706959, at *1 (N.D. W.Va. Feb 15, 2022) (Mazzone, M.J.), *report and recommendation adopted*, No. 5:21-V-184, 2022 WL 698061 (N.D. W.Va. Mar. 8, 2022) (citations omitted). Because the exhaustion requirement is judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances, and accordingly, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. **Sites** at *1 (*citing* **LaRue v. Adams**, 2006 WL 1674487, at *5-7 (S.D. W.Va. June 12, 2006)(Faber, C.J.),(citations omitted)). However, even in cases where the administrative process is unlikely to grant an inmate relief, courts have enforced a longstanding policy favoring exhaustion. *Id.* (citing **Alexander v. Hawk**, 159 F.3d 1321, 1327-28 (11th Cir. 1998)).

In this case, it is undisputed that the petitioner has not exhausted his administrative remedies. While he claims that the BOP denied him "access" to the administrative grievance procedure [Doc. 1-1 at 1], the record does not support this contention. He states, for example, that on July 3, 2023, he "requested" a BP-8 Form "from prison staff via Trulinks." [Doc. 1 at 7,8; 1-1 at 1; 1-2 at 1]. Although he has attached that request to his petition [Doc. 1-2 at 1], there is no indication that he pursued any further attempt to file an administrative grievance, or that his request for the Form was, in fact, ignored, or, more significantly, that he was "not allowed to access the prison's internal grievance procedure." *Id*. Moreover, the undersigned notes that petitioner made this request for a BP-8 Form just 12 days before he signed and dated the instant petition on July 16th, and 24 days prior to its filing herein, on July 28, 2023. [Doc. 1-2 at 1; 1 at 9]. Certainly, he would have no reasonable expectation of completing the administrative grievance process in such an abbreviated time frame. "Administrative law requires proper exhaustion of administrative remedies, 'which means using all steps that the agency holds out and doing so *properly*.'" **Woodford v. Ngo**, 548 U.S. 81, 81 (2006) (citation omitted). Furthermore, "[t]o any extent that petitioner believes exhaustion of remedies in this matter is futile because his sentence will have ended before he could complete the remedy process, exhaustion is not waived simply because a habeas petitioner believes that the length of the administrative process would preclude him from receiving full relief." **Reese v. Heckard**, No. 5:22-CV-00033, 2022 WL 4100849, at *5 (S.D. W.Va. Aug. 5, 2022) (Eifert, M.J.), *report and recommendation adopted*, No. 5:22-CV-00033, 2022 WL 4100268 (S.D. W.Va. Sept. 7, 2022) (citations omitted).

Additionally, the undersigned notes that petitioner has previously filed an administrative remedy (un-related to the instant claim), which was filed at the institutional level, ostensibly demonstrating that he is knowledgeable of the workings of the prison's internal administrative procedure and that he has been able to obtain forms and file them in the past, at least up to and including the filing of a BP-9. [Doc. 13 at 5; 13-5]. Petitioner's conclusory statements that he has been denied access to the remedy process are insufficient to overcome the exhaustion requirement. Nonetheless, even if petitioner's claim could survive his failure to exhaust administrative remedies, his petition is subject to dismissal.

### B. Petitioner's challenges to the Maricopa County Detainer

Petitioner raises challenges to both the validity of the Maricopa County detainer and also the effect the detainer is having on the conditions of his federal custody. There is a recognized "fundamental distinction" between these two types of challenges: "'[t]he former is an assault on the detainer's underlying criminal charges or conviction,' while the latter challenges the adverse impacts on the prisoner's current confinement that have resulted from the detainer being filed." **McCoy v. Davis**, No. 2:19-CV-48, 2019 WL 943657, at *1, (D. S.C. Feb. 1, 2019) (Baker, M.J.) (*citing* **Norris v. Georgia**, 522 F.2d 1006, 1011 (4th Cir. 1975)), *report and recommendation adopted*, No. 2:19-CV-48, 2019 WL 935229 (D. S.C. Feb. 26, 2019). For the reasons set forth below, neither argument states a viable claim.

*1. The Validity of the Maricopa Detainer*

Petitioner' asserts that the Maricopa County detailer is "unlawful" and that the Sheriff is attempting to impose "an illegal consecutive sentence" in violation of the

7

Superior Court's order that its sentence run concurrently with his federal sentence. [Doc. 1 at 6, 1-1 at 1-2]. He complains that had the detainer been filed sooner, he could have finished serving his state time before his release from federal custody, as the Superior Court intended. He asks this Court to "bar" the Sheriff from executing the "illegal" detainer. [Doc. 1 at 8].

At the outset, the undersigned notes that while the petitioner has named the Sheriff of Maricopa County as a respondent herein, the only proper respondent in a habeas action is the custodian of the prisoner. *See* 28 U.S.C. § 2243 ("[t]he writ of habeas corpus or order to show cause shall be directed to the person having custody of the person detained"); **Rumsfeld v. Padilla**, 542 U.S. 426, 434, 435 (2004) (the writ of habeas corpus acts upon the person with the ability to produce the prisoner's body before the habeas court, therefore the only proper respondent is the petitioner's custodian); **Braden** at 494 (the "writ of habeas corpus does not act upon the prisoner who seeks habeas relief, but upon the person who holds him in …custody."). This Court, furthermore, lacks personal jurisdiction over the Sheriff of Maricopa County. Consequently, the only proper respondent in this case is the Warden of FCI Gilmer, and the Sheriff should be dismissed.

Moreover, the law is clear that to the that to the extent the petitioner is attacking the detainer's validity and "lawfulness," or seeking credit against his current sentence for service of his state sentence, he is proceeding in the wrong forum and must instead seek relief from the "appropriate court" in Arizona. *See* **Wallace v. Crawley**, 817 F.2d 103, at *1 (4th Cir. 1987) (unpublished) (Table) (*citing* **Norris v. Georgia**, 522 F.2d 1006 (4th Cir. 1976). The issuance of a detainer "is an act of the state based on the state's law and process." **Jones v. Deboo**, No. 1:11-CV-142, 2012 WL 2396367, at *3 (N.D. W.Va. April

17, 2012) (*citing* **Esposito v. Mintz**, 726 F.2d 371, 373 (7th Cir. 1984)) (Kaull, M.J.), *report and recommendation adopted*, No 1:11-CV-142, 2012 WL 4100268, at *2, *3 (N.D. W.Va. June 25, 2012) (citation omitted) (Keeley, J.).  Accordingly, the proper jurisdictional basis for the petitioner's challenge to the validity of the detainer is a petition for habeas corpus, filed pursuant to 28 U.S.C. § 2254, and filed not here, in West Virginia, where he is confined, but in the district where the detainer originated. ***Id***. *See also* **Senty-Haugen v. Adams,** No. 1:20-CV-47, 2021 WL 4974051, at *6 (N.D. W.Va. July 30, 2021) (citations omitted) (Aloi, M.J.), *report and recommendation adopted*, No. 1:20-CV-47, 2021 WL 4443066 (N.D. W.Va. Sept. 28, 2021) (Keeley, J.).  If petitioner wishes to challenge the *validity* of the Maricopa County detainer, he must seek relief pursuant to § 2254 in the United States District Court for the District of Arizona, and only after he has exhausted all available state remedies. **Wallace v. Crawley** at *1; **Jones v. Deboo,** No. 1:11-CV-142, 2012 WL 2396367, at *3 (citation omitted); **Jones v. Deboo**, No. 1:11-CV-142, 2012 WL 4100268, at *2, *3 (citation omitted); **Senty-Haugen v. Adams** at *6 (citations omitted).

2.  *The Effect of the detainer*

Petitioner also contends that the BOP's decision to deny him halfway house placement, based on the filing of the detainer, violates a liberty interest, and he asks this Court to order the BOP to release him to a halfway house for the remainder of his federal sentence. [Doc. 1-1 at 2].  The undersigned notes that to the extent petitioner is challenging the detainer's *effect* on his current confinement, while this district is the proper forum for raising such a claim, the petitioner is nonetheless not entitled to the relief he requests.

Pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons is charged with the responsibility to "designate the place of [a] prisoner's imprisonment." Under § 3624(c)(1), as amended by the Second Chance Act of 2007, Pub.L.No. 110-99, the Director of the BOP, is to ensure, to the extent it is "practicable," that prisoners spend a portion of their final months "under conditions" that will afford them "a reasonable opportunity to adjust to and prepare for reentry" into the community, and further, that such "conditions" may also "include a community correctional facility," commonly referred to as an "RRC" (Residential Reentry Center); "CCC" (Community Correctional Center), or a "halfway house." The statute further requires that the decision to confine a prisoner in a halfway house shall be made on an individualized basis and in consideration of several factors, most of which are identified in the five-factor review criteria, set forth in § 3621(b), to include: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the U.S. Sentencing Commission. 18 U.S.C. § 3624(c)(6); 18 U.S.C. § 3621(b). Moreover, the Act makes it clear that the decision to place a prisoner in an RCC is within the discretion of the BOP, as the statute expressly states that: "Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3631." 18 U.S.C. § 3624(c)(4). Thus, the BOP may place a prisoner in a halfway house or in lower custody for a certain portion of their sentence, and as this Court has acknowledged, "the BOP has exclusive discretion to determine whether, and for how long, to release an inmate to an RRC." **Davis v. Hendrix**, No. 2::19-CV-67, 2019 WL 384005, at *3 (N.D. W.Va. Jan. 30, 2019) (internal citations omitted). (Bailey, J).

The law is likewise clear that petitioner has no liberty interest in being placed in a halfway house. ***Mubang v. Warden, Hazelton Secure Female Facility***, No. 1:18-CV-181, 2020 WL 1902552, at *9 (N.D. W.Va. Jan. 22, 2020) (Aloi, M.J.), *report and recommendation adopted*, No. 1:18-CV-181, 2020 WL 773440 (N.D. W.Va. Feb. 18, 2020) (Kleeh, J.); ***De Rivas v. Entzel***, No. 2:18-CV-35, 2018 WL 4956531, at *5 (N.D. W.Va. Sept. 17, 2018) (Mazzone, M.J.) (citations omitted), *report and recommendation adopted*, No.2:18-CV-35, 2018 WL 4956114 (N.D. W.Va. Oct. 11, 2018)  (Bailey); ***Gomez-Rodriguez v. Perdue***, No. 2:14-CV-19, 2014 WL 4782948, at *7 (N.D. W.Va. September 23, 2014) *adopting report and recommendation* dated Aug. 13, 2014 (Kaull, M.J.) (internal citations omitted).  In the absence of a protected liberty interest in being placed in an RRC, and the fact that "the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials," this Court has ruled that it "cannot intervene in that decision unless a clear constitutional violation has occurred." ***Davis*** at *3; ***Mubang,*** at *9. The undersigned finds that no such violation has occurred in this case. Indeed, to the contrary, the record reflects that the BOP did consider the petitioner for placement in an RRC, and did so utilizing the five-factor review, mandated by the Second Chance Act in conducting an individualized assessment of the petitioner's circumstances. [Doc. 13-4 at 3].  Significant also, in this respect, is the fact that the petitioner has made no argument herein alleging that the BOP failed to comply with its statutory responsibility, or that it engaged in unconstitutional conduct, or acted outside the scope of its discretionary authority, in making the determination to deny his halfway house placement. As this Court has long recognized, "it is not for this Court to direct the BOP how to execute that which the legislature has

entrusted to its discretion." ***Nehrenz v.Hendrix***, No. 2:18-CV-38, 2018 WL 5726198, at *5 (N.D. W.Va. Nov. 1, 2018). (Bailey, J.). It is not the Court's role to "second guess or order the reevaluation of previous evaluations that were properly conducted according to the requirements of the Second Chance Act. ***Id.*** Such determinations are "entirely at the discretion of the BOP." ***Gomez-Rodriguez*** at *6. Given the authority of the BOP to determine where a prisoner will serve his time, and the statutory mandate preserving that discretion from judicial review, the record herein supports the finding that "keeping the petitioner in prison until his release date is not a violation of his Constitutional rights." See ***Id.*** at *3. Accordingly, this Court is without jurisdiction and petitioner's claim is subject to dismissal.

### C.  Petitioner cannot pursue a challenge to his conviction using § 2241

Petitioner asks this Court to "vacate" his convictions in the Southern District of Iowa. [Doc. 1 at 8]. Petitioner clearly recognizes that prisoners seeking to challenge the validity of their convictions or sentences are required to proceed under § 2255 in the district court of conviction, as he attempts to argue the inadequacy or ineffectiveness of § 2255 by claiming that a § 2255 petition "would just be dismissed," and that the "only way" he can "get relief" is through a § 2241 petition in this Court. [Doc. 1 at 8,9]. This claim is without merit.

While the terms of § 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under § 2241, the "saving clause" in § 2255(e), allows a prisoner to challenge the validity of a conviction and/or sentence under § 2241, if he can demonstrate that § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Until recently, several courts,

12

including the Fourth Circuit, had held that § 2255 was "inadequate or ineffective" when a prisoner sought relief based on a new interpretation of a criminal statute subsequent to petitioner's trial, appeal, and first § 2255 motion.[1]  However, the Supreme Court recently held that "Section 2255(e)'s saving clause does not authorize that end-run around [Antiterrorism and Effective Death Penalty Act of 1996]," and that, instead, the saving clause is limited to "unusual circumstances in which it is impossible or impracticable for the prisoner to seek relief from the sentencing court." **Jones v. Hendrix**, 143 S. Ct. 1857, 1860, 1866 (2023).  Absent such unusual circumstances, a petitioner is not permitted to proceed with challenges to his conviction or sentence under § 2241. **Johnson v. Brown,** No. 5:22-CV-321, 2023 WL 5289215, at *3 (N.D. W.Va.  August 15, 2023),(Bailey, J.) ("The inability of a prisoner with a statutory claim to satisfy those conditions does not mean that he can bring his claim in a habeas petition under the saving clause. **It means that he cannot bring it at all.** Congress has chosen finality over error correction in his case.") (emphasis added); see also **Hall v. Hudgins**, No. 22-6208, 2023 WL 4363658, at *1 (4th Cir. July 6, 2023) (unpublished) (per curiam) (following **Jones**, a petitioner cannot use § 2241 to bring a successive collateral attack on the validity of his sentence). **Johnson**, at *3, citing **Jones** at 1869.

This petitioner has not shown that it is impossible or impracticable to present his claims to his sentencing court.  Indeed, quite to the contrary, on the very same day that he filed his § 2241 petition in this Court, he also filed a § 2255 motion in the District Court for the Southern District of Iowa. **Leveke v. United States,** [ECF Doc. 1, Case No. 4:23cv-

---

[1] See **In re Jones**, 226 F.3d 328, 333–34 (4th Cir. 2000) to challenge conviction; and **United States v. Wheeler**, 886 F.3d 415, 428 (4th Cir. 2018) to challenge sentence.

00270-SMR]. The District Court in Iowa, finding that it "did not appear" from his pleadings that the petitioner was "not entitled to relief," and ordered the government to respond to petitioner's motion. [Id. at ECF No. 2]. As of the date of the entry of this Report & Recommendation, the CM/ECF electronic document filing system for the Southern District of Iowa reflects that a decision on said § 2255 petition is still pending in Case No. 4:23cv-00270-SMR. Clearly, then, petitioner cannot show it is impossible or impractical for him to present his claims to the sentencing court, and this Court is accordingly without jurisdiction to entertain his claim herein.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Respondent's Motion for Summary Judgement [Doc. 13] be **GRANTED** and that the petition be **DISMISSED** with prejudice.

The petitioner shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985);

***Wright v. Collins***, 766 F.2d 841 (4th Cir. 1985); ***United States v. Schronce***, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

      This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

      **DATED**:  January 9, 2024

                                            */s/ James P. Mazzone*
                                            JAMES P. MAZZONE
                                            UNITED STATES MAGISTRATE JUDGE